DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**D ELECTRICIAN TECHNICAL SERVICES, INC.,**
Appellant,

v.

**GREGORY TONY,** as Sheriff of Broward County, Florida,
Appellee.

No. 4D2023-0673

[November 27, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Keathan B. Frink, Judge; L.T. Case No. CACE20-011516.

Kenneth L. Minerley and Ashley D. Adras of Minerley Fein, P.A., Boca Raton, for appellant.

Michael Garcia of Michael Garcia, PA, Fort Lauderdale, for appellee.

KUNTZ, J.

D Electrician Technical Services, Inc. appeals the circuit court's final judgment in favor of Gregory Tony, as Sheriff of Broward County. The circuit court ruled that D Electrician was not licensed to perform certain construction work at BSO's Public Safety Building and therefore could not enforce the electrical services agreement between D Electrician and BSO.

We write to address two arguments D Electrician raises on appeal. First, D Electrician argues that, as an electrical contractor, it was permitted to undertake the project without an underground utility and excavation license. As a result, D Electrician argues it was entitled to enforce the agreement. Second, D Electrician argues BSO issued an improper termination notice and failed to pay D Electrician's invoice for completed services.

For the reasons explained below, we reverse on both arguments.

## *Background*

On August 1, 2019, D Electrician and BSO entered into an electrical services agreement. The agreement pre-qualified D Electrician to provide BSO with "general electrical services" at BSO's request. In addition, BSO was permitted to ask D Electrician to submit bids or proposals for certain projects.

A few months later, BSO initiated a request for quote for an "Underground Conduit Installation Project." BSO sought to install an underground conduit for a new training center at its Public Safety Building. The scope of work primarily involved excavating trenches, installing "FPL provided" conduit, and backfilling the trenches. The project also included installing temporary construction fencing and participating in a groundbreaking ceremony. Through the RFQ, BSO sought quotes from its pool of pre-qualified electrical contractors, such as D Electrician, to complete the project.

The project's excavation portion was sizeable. The RFQ stated that the project required approximately 780 feet of trenches, 200 of which ran through paved areas. Attached to the RFQ were installation plan notes stating the contractor must install the conduits at least thirty-six inches below the surface. Therefore, the trenches needed to be approximately five feet wide and five feet deep. The contractor also needed to route the conduit such that it avoided disrupting existing utilities or landscaping.

D Electrician submitted a bid for the project. BSO accepted D Electrician's bid and issued a purchase order for the work. The purchase order referenced the agreement and adopted its terms. A building permit was issued that described the project as "Electric Miscellaneous."

To assist with excavating the trenches, D Electrician hired Chuck's Backhoe. Chuck's provided the backhoe and a trained operator. But Chuck's was not a Florida-licensed underground utility and excavation contractor.

Shortly after D Electrician began work on the project, a live FPL transformer tilted over into a trench recently excavated by Chuck's. As a result of the transformer tilting, BSO's public safety building lost power for almost nine hours. D Electrician testified that it was not directly supervising Chuck's work. Nor did D Electrician give specific instructions to Chuck's because D Electrician was not "trencher[s]" or "underground contractor[s]." Yet Chuck's testified that it took directions from D Electrician and dug "the way [D Electrician] wanted it."

2

Two days after the incident with the transformer, BSO sent D Electrician a notice of contract termination. The notice stated BSO was terminating the agreement for convenience under the agreement's section 15.2, and that D Electrician must immediately cease all work and remove all its equipment and items from BSO property. However, BSO did not provide the thirty days' notice required by section 15.2.

At the time BSO sent the termination notice, D Electrician alleged that it was about 69% complete with the project. D Electrician submitted invoices to BSO for services which it had provided before termination, also pursuant to the agreement's section 15.2. But BSO did not pay the invoices.

D Electrician sued BSO for breach of the agreement and unjust enrichment, stemming from BSO's failure to provide proper notice before termination and failure to pay D Electrician's invoices. Ten months after BSO initially had answered the complaint, BSO amended its answer to allege for the first time that the agreement was unenforceable under section 489.128, Florida Statutes (2019), because D Electrician had not been licensed to perform underground utility and excavation work.

The parties filed competing summary judgment motions. BSO argued that D Electrician could not enforce the agreement because D Electrician had not hired a licensed underground utility and excavation subcontractor to perform the excavation, and any excavation work performed had exceeded the scope of its electrical contractor's license. D Electrician argued that Florida law had permitted it to perform excavation incidental to electric work, even with just an electrical contractor's license.

The circuit court granted BSO's summary judgment motion, finding that D Electrician (or its subcontractor) had needed an underground utility and excavation license to perform the contracted work. Without that license, "D Electrician performed unlicensed work" and was "not permitted to enforce" the Agreement.

After clarifying its ruling on rehearing, the circuit court entered its final judgment in favor of BSO on D Electrician's claims.

### *Analysis*

i.     *D Electrician Was Properly Licensed to Conduct the Excavation Work Incidental to D Electrician's Conduit Work*

3

Chapter 489, part I, Florida Statutes (2019), governs "Construction Contracting." Within that part is section 489.128(1), Florida Statutes (2019), which states that, in furtherance of public policy, a contractor cannot enforce a construction contract in law or equity if the contractor is "unlicensed." A contractor is considered "unlicensed" if he or she "does not have a license required by this part concerning the scope of the work to be performed under the contract." § 489.128(1)(a), Fla. Stat. (2019).

BSO argues D Electrician was not properly licensed because it was not licensed to perform the project's excavation portion. In support, BSO relies on another statute within chapter 489, part I: section 489.105(3)(n), Florida Statutes (2019), which defines "[u]nderground utility and excavation contractor."

However, section 489.105(3)(n) does not contemplate that an underground utility and excavation contractor handles excavation for *all* utilities. Section 489.105(3)(n) contemplates that this type of contractor performs excavation for projects involving "continuation of utility lines from the main systems to a point of termination . . . ." *Id.* Just prior to this language, section 489.105(3)(n) identifies what "main systems" this refers to: "main sanitary sewer collection systems, main water distribution systems, [and] storm sewer collection systems . . . ." *Id.* This portion of section 489.105(3)(n) does not mention electrical systems.

The circuit court did not limit section 489.105(3)(n)'s applicability to those "main systems," but instead conducted its own research to define "utility lines" in the statute. The court cited section 350.011, Florida Statutes (2019)—the statute establishing the Florida Public Service Commission—because the Commission regulates electric services among other public utilities. The court also cited section 366.02, Florida Statutes (2019), which defines certain public utilities for chapter 366 and refers to an "electric utility." The court also cited the Merriam-Webster dictionary definition of "utility."

Turning to those sources to define "utility" in section 489.105(3)(n) was unavailing. Although section 489.105(3)(n) contains the word "utility," the legislature did not give that word an unlimited meaning—the statute instead applies to services on "utility lines from the main systems to a point of termination . . . ." § 489.105(3)(n), Fla. Stat. (2019). And "main systems" refers to "main sanitary sewer collection systems, main water distribution systems, [and] storm sewer collection systems . . . ." *Id.* The definition of "utility" in section 489.105(3)(n) is limited to what the statute contemplates: water and sewer systems.

4

Section 489.105(3)(n) is also inapplicable for a second reason. Section 489.105(3)(n)'s second half spells out the conduits that an underground utility and excavation contractor may install:

> empty underground conduits in rights-of-way, easements, platted rights-of-way in new site development, and sleeves for parking lot crossings no smaller than 2 inches in diameter if each conduit system installed is designed by a licensed professional engineer or an authorized employee of a municipality, county, or public utility and the installation of such conduit does not include installation of any conductor wiring or connection to an energized electrical system.

*Id.* The conduits in this case are the type of conduit which section 489.105(3)(n) expressly forbids an underground utility and excavation contractor from installing: conduits connecting to an energized electrical system. *See id.*

We find chapter 489's part II, not part I, applicable. Part II governs "Electrical and Alarm Systems Contracting." Section 489.505(12), Florida Statutes (2019), defines an electrical contractor as:

> a person who conducts business in the electrical trade field and who has the experience, knowledge, and skill to install, repair, alter, add to, or design, in compliance with law, electrical wiring, fixtures, appliances, apparatus, raceways, **conduit**, or any part thereof, which generates, transmits, transforms, or utilizes electrical energy in any form, . . . all in compliance with applicable plans, specifications, codes, laws, and regulations.

§ 489.505(12), Fla. Stat. (2019) (emphasis supplied). Further, section 489.537(2)(a) states that "[t]he scope of electrical contracting" shall include "any **excavation**, paving, and other related work incidental thereto and shall include the work of all specialty electrical contractors." § 489.537(2)(a), Fla. Stat. (2019) (emphasis supplied). Finally, section 489.538, Florida Statutes (2019), provides that "[a] licensee under this part need not have a license under part I to perform work within the scope of his or her license under [part II]."

Reading these three sections together, an electrical contractor may perform excavation work incidental to installing electrical conduit and does not need a construction contracting license under part I (such as, for

5

example, an underground utility and excavation contractor license) to perform that work.

Section 489.537(2)(a), Florida Statutes (2019), contains an important exception:

> However, such electrical contractor shall subcontract the work of any other craft for which an examination for a certificate of competency or registration or a license is required, unless such contractor is certified or registered or holds a license for the respective trade category as required by the appropriate local authority.

§ 489.537(2)(a), Fla. Stat. (2019). BSO argues that based on this language, "D Electrician should have subcontracted the excavation scope of work to a licensed Underground Utility and Excavation Contractor because D Electrician did not hold that type of license."

This argument fails for two reasons. First, excavation is not "any other craft" as it was specifically mentioned in section 489.537(2)(a) as within an electrical contractor's scope of work. *See id.* Second, as stated above, section 489.105(3)(n) indicates that an underground utility and excavation contractor license is not necessary or relevant to electrical work. In fact, section 489.105(3)(n) expressly prohibits an underground utility and excavation contractor from installing conduit connected to an energized electrical system. *See* § 489.105(3)(n), Fla. Stat. (2019).

We read chapter 489's parts I and II together. Section 489.105(3)(n) requires an underground utility and excavation contractor license for excavation related to water, sewer, and stormwater systems. Section 489.105(3)(n) also permits such contractors to install empty underground conduit in certain areas, so long as an authorized or licensed professional designs the conduit system, and the conduit system does not involve conductor wiring or connection to an energized electrical system. *See* § 489.105(3)(n), Fla. Stat. (2019). If the conduit system involves an energized electrical system, then section 489.505(12) requires the contractor to have an electrical contracting license. And to allow the electrical contractor to install the electrical conduit, section 489.537(2)(a) permits the contractor to perform excavation and other related work incidental to the installation.

Based on that statutory analysis, D Electrician possessed the license necessary for the Project—an electrical contractor's license—which permitted D Electrician to undertake excavation work incidental to its

6

conduit work. Thus, we reverse the circuit court's order concluding the contract was void.[1]

### ii. BSO's Termination Notice Was Improper

D Electrician also argues that BSO's termination notice was improper and that BSO failed to pay D Electrician's invoices for completed work. BSO does not respond to this argument.

The record indicates BSO failed to provide thirty days' notice prior to issuing the termination letter. Nor did BSO pay any of the invoices.

Therefore, we accept D Electrician's second argument and reverse the circuit court's order on this basis as well.

### Conclusion

The circuit court's final judgment in favor of BSO is reversed. The case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

WARNER and GERBER, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[1] Even if we concluded D Electrician was required to retain a licensed excavation contractor, the contract would not necessarily be void. D Electrician was a licensed contractor and entered into a contract that included excavation. D Electrician was permitted to do so. Instead, the issue would be whether or not D Electrician breached the contract by failing to retain a licensed excavation subcontractor.

7